UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VINCENT HINES                                        CIVIL ACTION

VERSUS                                               NO. 06-3771

BURL CAIN                                            SECTION "A" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Vincent Hines, is a prisoner who has been convicted of looting during the immediate aftermath of Hurricane Katrina.  He is currently incarcerated in the Catahoula Correctional Center in Harrisonburg, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary Warden Burl Cain.  Hines alleges that, following his arrest for looting in early September 2005, he was incarcerated under unconstitutional conditions for three (3) days in a post-hurricane temporary detention facility located at the former Greyhound bus station in New Orleans.  He seeks damages and injunctive relief, including "terminating Warden Cain of his official capacity as Warden at Louisiana State Penitentiary, until this matter is resolved."  Record Doc. No. 1, Complaint.

On September 14, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Phyllis Glazer and Michael Keller, counsel for

defendant.  Plaintiff was sworn and testified for all purposes permitted by <u>Spears v.</u> <u>McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

After the conference, Hines filed a document entitled "Supplemental Testimony," Record Doc. No. 17, in which he requests a temporary injunction or restraining order to have him "transferred to a facility which is owned and operated by the Louisiana Department of Corrections."  This report contains a recommendation for disposition of plaintiff's motion for injunctive relief pursuant to 28 U.S.C. § 636(b)(1)(B).

## <u>THE RECORD</u>

Hines testified that he is currently incarcerated based on his conviction on August 15, 2006 in Jefferson Parish for looting[1] in the immediate aftermath of Hurricane Katrina, which struck the New Orleans metropolitan area with catastrophic results on

---

[1]Looting is defined as

> the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as a home or place of abode . . . [or] a place of business, . . . in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, . . . and the obtaining or exerting control over or damaging or removing property of the owner.

La. Rev. Stat. § 14:62.5(A).  The penalties for conviction are a fine of up to $10,000 or up to 15 years of imprisonment at hard labor, or both.  <u>Id.</u> § 14:62.5(B). If the looting occurred during a government-declared state of emergency, as occurred in the aftermath of Hurricane Katrina, the law provides mandatory penalties of at least $5,000, up to $10,000, <u>and</u> at least 3 years of imprisonment at hard labor, up to 15 years, without benefit of probation, parole or suspension of sentence.  <u>Id.</u> § 14:62.5(C).

August 29, 2005.  He stated that he was sentenced to serve 14 years in prison for that

offense.

In his written submissions to the court, plaintiff stated:

[O]n September 8th, 2005, I was transferred from Jefferson Parish Correctional Center to the Greyhound bus station for temporary housing due to the devastation caused by [H]urricane Katrina.  While in the custody of the department of corrections and being overseen by officers from the Louisiana State Penitentiary in Angola, LA, we were subjected to numerous acts of cruel and unusual punishment.  Upon my arrival at the bus station, I was treated in a very inhumane manner, including and not limited to corporal punishment and torture, along with deprivation of basic human needs.  There was no medical staff available, no reasonable concern for our safety which led to deliberate indifference on the part of all the defendants involved.  This cruel treatment began during the night of September 8th, 2005.  We were forced to sleep on the concrete covered with chemicals, i.e. oil, fuel , grease, bird waste etc. in barbed wire fenced cages with no type of protection from the potentially harmful and hazardous materials.  We were not provided mats or blankets and were forced to endure extremely cold,[2] hard and painful days of physical and emotional abuse, which lasted from September 8th thru [sic] September 11th, 2005.  While we witnessed several officers sleeping on mats with cots and blankets in plain view of all detainees in custody.

During this time we were ordered to clean ourselves outside, in an open portable toilet aparatus [sic], while we were sprayed with a basic garden hose.  During these actions I was subjected to emotional suffering, physical harm, embarrassment and de-humanization due to the loss of amenity [sic] in the Greyhound bus station living conditions.

---

[2]According to weather history records for New Orleans for September 8 through September 11, 2005, the lowest nighttime temperatures ranged from 72 to 75.9 degrees Fahrenheit, while the daily high temperatures ranged from 88 degrees to 91 degrees Fahrenheit.  These records are publicly available at http://www.almanac.com/weatherhistory.

The defendants Burl Cain, Marlon [sic] Gusman, Bill Hunter[3] and their employees/subordinates actually condoned this activity by acting with deliberate indifference toward every Detainee/Evacuee. To that extent, defendants acted as willing participants to violate the civil rights of Detainees. As a direct result of this treatment, I suffer from bouts of mental anguish, psychological trauma, anxiety, paranoia and physical injury. These are the facts of the incidents and conditions as they occured [sic] during my temporary incarceration in custody of Burl Cain and his employees, and other defendants named herein.

Record Doc. No. 7, Plaintiff's Statement of Facts.

During the September 14, 2006 telephone conference, Hines testified that he was arrested on September 4, 2005, about a week after Hurricane Katrina struck the New Orleans area, on the looting charge for which he was later convicted. He stated that he was initially taken to the Jefferson Parish jail in Gretna, Louisiana, after his arrest on that charge and was then taken to the temporary detention facility at the Greyhound bus station in New Orleans on September 8, 2006.

Hines testified that he was kept at the bus station for only about three days and was transferred to Hunt Correctional Center in St. Gabriel, Louisiana on September 11, 2005. He testified that his claim in this case is based exclusively on the conditions he experienced at the temporary bus station holding facility.

---

[3]Plaintiff did <u>not</u> name Orleans Parish Criminal Sheriff Marlin Gusman or Orleans Parish Prison Warden Bill Hunter as defendants in his original complaint. Record Doc. No. 1.

4

Asked to describe the conditions about which he complains in this case, Hines testified that the bus station was surrounded by barbed or razor wire and that the detainees "were treated like some kind of animals. . . .  We slept on dirty oil and concrete."  He complained that the prisoners were kept "outside . . . . I'm a diabetic and I stayed on that ground three days before I got any kind of medical attention."  He said he received insulin for his diabetic condition on the third day of his stay at the bus station.

Asked what he meant by the allegation in his papers that he was subjected to "corporal punishment and torture," Hines testified that "we showered outside, and they passed and laughed at us and called us all kinds of names.  [We] slept on the ground and the food they gave us . . . I couldn't eat it." Asked what kind of food he was given, he said he did not know, "it came in an Army box or something."  Plaintiff would not elaborate further on the conditions, except to say that "it was nasty. . . .  We were videoed . . . like this was a joke."  He complained that guards laughed at him while they were videotaping the scene.

Asked what physical injuries he suffered, Hines said he went into a "diabetic coma" while at the bus station.  He testified that he was unconscious for about two days, although he remained aware of what was going on around him.  He concluded his

testimony by saying that the written submissions he had sent to the court should speak for themselves.

## **ANALYSIS**

I.  STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).   Haddix v. Kerss, No. 04-41636, 2006 WL 2861110, at *2 (5th Cir. Oct. 9, 2006); Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[4]

## II.   VERBAL HARASSMENT

Plaintiff's allegations that he was laughed at and called names during the three days he spent at the temporary detention center are not cognizable under Section 1983.

---

[4]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995).  The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'"  Id. (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)); Burnette v. Phelps, 621 F. Supp. 1157, 1162 (M.D. La. 1985); see also Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) abrogated in part on other grounds by Graham v. Connor, 490 U.S. 386, 397 (1989) (the use of language, no matter how violent, does not constitute a Section 1983 violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under Section 1983).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  Thus, for example, the use of a racial epithet in a single isolated context does not give rise to a cause of action for violation of constitutional rights.  DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), reh'g denied & opin. clarified, 186 F.3d 633 (5th Cir. 1999); see generally Shabazz v. Cole, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (collecting cases).  "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and

inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Reference., 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994) (internal citations omitted).  In this case, plaintiff's allegations of verbal harassment do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

III.   CONDITIONS OF CONFINEMENT

Plaintiff asserts that he was subjected to unconstitutionally unsanitary conditions while incarcerated at the temporary jail at the Greyhound bus station for only three days shortly after Hurricane Katrina.  Plaintiff's claim of inadequate conditions of confinement drips with unacceptable irony.  He was held in the temporary detention facility at the bus station, which had to be established because of the catastrophic aftermath of Hurricane Katrina, and which forced closure of other jails in the New Orleans area and caused the need to evacuate him from the Jefferson Parish jail.  He was being held on a charge of looting (of which he was later convicted) during a state of emergency, in the aftermath of the hurricane, during which he took advantage of those emergency conditions to steal the property of people who had already been victimized by the hurricane and its aftermath, at a time when law enforcement officials and local jails had also been adversely affected by the hurricane.

10

Hines was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996);  Hare, 74 F.3d at 650. In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Id.

Nothing in plaintiff's written submissions or Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114

11

F.3d 51, 53 (5th Cir. 1997)), and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.

As to these particular claims, Hines's allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other citations omitted)) (emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions relate to jail officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed." <u>Hamilton</u>, 74 F.3d at 104 n.3.  Thus, Hines must allege facts sufficient to establish that any defendant <u>knew</u> he faced a <u>substantial risk</u> of <u>serious</u> harm and <u>disregarded that risk</u> by failing to take reasonable measures to abate it.

Plaintiff fails to allege any such facts when he complains about temporary conditions, including being held in a caged enclosure for three to four days, sleeping on the ground without a mattress or blanket during the New Orleans summer, using a

portable toilet, bathing with a garden hose, eating food that "came in an Army box or something" and being videotaped by guards.

These allegations assert nothing more than a temporary discomfort that is insufficient to state a claim of constitutional dimension.  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Id.  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Although the conditions he described may have been unpleasant, Hines has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer. Accordingly, this claim does not rise to the level of constitutional violation.

A short-term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation.  Davis, 157 F.3d at 1006; Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing

14

Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Whitnack, 16 F.3d at 958. None of Hines's allegations about his three-day stay in the bus terminal establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Eady v. Head, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) (Nowak, M.J.) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

It also cannot be said that Hines faced "a substantial risk of serious harm" in the constitutional sense from the temporary lack of a mattress for three days.  Although the Fifth Circuit has not yet addressed this question, the Sixth Circuit at least once and the Eighth Circuit repeatedly has held in recent years that deprivation of bedding for a limited period of time is not per se unconstitutional.  See Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996)

15

(sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).   Provision of bedding falls within those matters committed to prison administrators' sound discretion.   Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion. Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on

the floor for two nights"); <u>Lyons v. Powell</u>, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); <u>Anela v. Wildwood,</u> 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); <u>Lareau v. Manson</u>, 651 F.2d 96, 105 (2d Cir. 1981) ("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); <u>Martino v. Carey</u>, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights"); <u>Vazquez v. Gray</u>, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional")); <u>Oladipupo v. Austin</u>, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("<u>Oladipupo II</u>") (citing the same cases).

First, none of the cases cited by Chief Judge Little presents a factual situation akin to Hines's.  Second, those cases applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials.  Thus, I find the Eighth Circuit's reasoning and holdings in its recent cases more persuasive in the instant case than the <u>Oladipupo</u> decisions and cases cited therein.

17

Living in temporary conditions such as those described by Hines may be an inconvenience, but it was an inconvenience necessitated by Hurricane Katrina and the need in that emergency situation to apprehend and detain looters and other persons like Hines himself, who had seized upon the disaster to loot and otherwise engage in civil disturbances. Hines has not alleged sufficiently serious harm resulting from the temporary three-day conditions to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Thus, plaintiff has not alleged a violation of a clearly established constitutional right

In two cases, the Fifth Circuit has held that <u>virtually permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment. In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy,

18

overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson, 501 U.S. at 304).

In the instant case, Hines was confined in the  temporary bus station holding facility for only three days under the emergency conditions caused by Hurricane Katrina. Because his case clearly falls within the ambit of the Fifth Circuit's holding in Davis, id., that a three-day confinement in such conditions is not unconstitutional, this claim advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

IV.   MEDICAL CARE

Hines was a pretrial detainee during the time period about which he complains about his medical care.  Before the Fifth Circuit's decision in Hare, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish, 441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of

19

reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel

v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as

recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.  The Fifth Circuit explained that for the Bell "reasonable

relationship" test to apply, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in

Estelle, 429 U.S. at 104, will apply.  Hare, 74 F.3d at 645.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a

claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he

20

demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, the same stringent standard discussed above in connection with plaintiff's claim concerning the conditions of his confinement, constitutes a civil rights violation. Thus, in connection with his medical care claim, plaintiff must show that prison officials were deliberately indifferent to his serious medical needs.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. The Farmer definition applies to Eighth Amendment medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind.  Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard, 114 F.3d at 551 (citing Board of County Commissioners, 520 U.S. at 410 (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case.  Thus, the "deliberate indifference" standard applies and plaintiff must allege facts

sufficient to establish that <u>defendants knew he faced a substantial risk of serious harm</u> <u>and disregarded that risk</u> by failing to take reasonable measures to abate it.  In this case, Hines fails completely to allege facts sufficient to establish deliberate indifference.

Plaintiff's testimony negates any inference that defendants acted with deliberate indifference to serious medical needs.  Initially, it cannot be concluded that the condition Hines described, diabetes, presented a serious medical need that posed a substantial risk of harm during his very brief incarceration at the bus station.  <u>See</u> <u>Serton v. Sollie</u>, No. 02-61010, 2003 WL 22849840, at *4 (5th Cir. Dec. 2, 2003) (defendants were not deliberately indifferent to a serious medical condition when record showed that plaintiff was treated for diabetes, despite his complaint that he was not treated immediately); <u>Maxwell v. Conn</u>, 893 F.2d 1395, 1990 WL 2774, at *3 (6th Cir. 1990) (two-day delay in seeing doctor for back pain after slip and fall incident and for abscess pain did not implicate serious medical needs); <u>Lewis v. Sheahan</u>, 35 F. Supp. 2d 633, 637 (N.D. Ill. 1999) (allegations that prisoner waited several months for appointment for physical therapy, CAT scan and thyroid tests did not implicate serious medical needs); <u>James v. Coughlin</u>, 13 F. Supp. 2d 403, 410 (W.D.N.Y. 1998) (plaintiff's alleged back injury from push by guard was not serious medical need); <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated where the plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

23

Hines's testimony about his medical problem did not identify any serious risks of harm or any actual harm resulting from the alleged delay in treatment. His allegation that he fell into a "diabetic coma" and was "unconscious" for about two days is contradicted by his own testimony that he remained aware of what was going on around him, he showered, he was videotaped, he knew that the guards were laughing at him and calling him names, and he was unable to eat the food provided to him because it came out of an Army box and tasted nasty. A "coma" is defined as "a state of unconsciousness from which the patient cannot be aroused, even by powerful stimulation." Dorland's Illustrated Medical Dictionary 382 (29th ed. 2000). Furthermore, a "diabetic coma" is defined as "the coma of severe diabetic acidosis, which is accompanied by Kussmaul's respiration." Id. "Kussmaul's respiration" is "a pattern of deep and rapid respiration." Id. at 1561. Although Hines apparently felt some adverse effects from the lack of insulin, he could not have been in a diabetic coma for two days because the symptoms he described do not match the symptoms of such a coma. Thus, his condition does not rise to the level of a serious medical need for purposes of constitutional analysis.

Even assuming that plaintiff's medical condition resulting from diabetes was a serious condition for constitutional purposes, he has alleged facts that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony, shows that he received constitutionally adequate medical care while

incarcerated when he was provided with insulin on the third day of his stay at the Greyhound bus station.

Although Hines has alleged delay in receiving medical care and has expressed dissatisfaction with the speed and effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983, particularly when considering that officials got him insulin on only the third day of his detention under the harsh conditions caused by the hurricane.

First, mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. The delay about which Hines complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen

wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case.

Contentions like Hines's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (Rainey, J.) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not allege that he suffered any substantial harm from the delay, failed to state a claim for deliberate indifference).

26

Second, plaintiff has not even alleged that defendants knew about his diabetes before the third day and willfully failed to provide him with insulin.  Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

V.      QUALIFIED IMMUNITY

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir. 1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process.  Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare, 135 F.3d at 325. The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right.  Jacobs, 228 F.3d at 393; Hare, 135 F.3d at 325.

The second step requires the court to determine whether defendant's conduct was objectively reasonable under existing clearly established law.  Jacobs, 228 F.3d at 393; Foster v. City of Lake Jackson, 28 F.3d 425, 429 (5th Cir. 1994).  In the absence of any

allegation of a violation of a clearly established right, defendant is entitled to qualified immunity, and the court need not consider the second question.  Id. at 428-29.

For all of the reasons discussed above, Hines fails adequately to allege a violation of a clearly established constitutional right.  In addition, however, defendant's conduct in taking Hines, a charged hurricane looter who was later convicted of that offense, to a hastily established and necessarily rough temporary detention facility at a time when area jails, like almost everything else, had been damaged or closed down by the hurricane, was objectively reasonable.  The conditions Hines described were necessitated by the extraordinary emergency situation wrought by the storm and its effects, which effects Hines exacerbated by his own opportunistic criminal misconduct.  At least as to convicted Hurricane Katrina looter Vincent Hines, defendant's conduct was objectively reasonable.

VI.    PENDING MOTION FOR INJUNCTION OR RESTRAINING ORDER

As mentioned in the introduction to this report, Hines filed a motion requesting that the court issue an injunction or restraining order.  Record Doc. No. 17.

Plaintiff alleges in his motion that, during the telephone conference conducted in this matter on September 14, 2006, "I was in the room with one of the prison guards sitting next to me. As a result of the officer's presence, I was unable to speak freely because I was afraid for my well-being.  The truth is several incidents of abuse towards

28

inmates from guards have occured [sic] since I arrived, including the incident which involved a beating of a diabetic inmate."  Hines further alleges that he has diabetes and "was afraid if the officer in the room heard me say something that would expose the abusive actions of the prison guards here at Lasalle [sic],[5] I would be subjected to violent retaliation from the officers here."  Id.  He asserts that injunctive relief in the form of transfer to a DOC facility would allow him to "provide the court with more information related to my case without the threat of fear and intimidation."  Id.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held.  A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause defendants; and (4) that the injunction will not disserve the public interest.  Sugar Busters LLC v. Brennan, 177 F.3d 258, 264 (5th Cir. 1999).  The

---

[5]At the time of the telephone conference, Hines was incarcerated at LaSalle Correctional Center in Olla, Louisiana.

requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued." <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts he alleges, Hines's written submissions and the record to date establish that he is <u>not</u> entitled to a temporary restraining order or preliminary injunction. Although plaintiff's motion alleges that he has diabetes; that several incidents of abuse towards inmates from guards have occurred since he arrived at LaSalle, including an alleged incident involving the beating of a diabetic inmate; and that he was afraid he would be "subjected to violent retaliation from the officers" at LaSalle if his telephone conference with the court was overheard, these wholly unsubstantiated allegations are the rankest form of speculation, and plaintiff has not established that any injury he may suffer in the future would be irreparable. Any cognizable injury plaintiff may suffer as a result of defendants' alleged or anticipated actions may adequately be remedied through the ordinary judicial process without need for a preliminary injunction or temporary restraining order.

It also cannot be concluded that plaintiff's complaint presents "a substantial likelihood of success on the merits." <u>DSC Commc'ns Corp.</u>, 81 F.3d at 600. Although Hines's allegations must be accepted as true for the initial screening process required for such cases, 28 U.S.C. § 1915A; <u>Martin v. Scott</u>, 156 F.3d 578 (5th Cir. 1998), and I have

done so above, no such requirement applies to his request for injunctive relief.  Hines has not clearly alleged at this early stage of the proceedings that a violation of his clearly established constitutional rights has occurred.  Moreover, injunctive relief interfering with the administration of prison functions by the court, without justification, would disserve the public interest.

Furthermore, as to plaintiff's request to be transferred to a DOC facility, a prisoner has no right of any kind springing from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another.  Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Taylor v. Jagers, 115 Fed. Appx. 682, 2004 WL 2526373, at *1 (5th Cir. 2004); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995).  Therefore, plaintiff has no right to a temporary restraining order or a preliminary injunction ordering him to be transferred to any specific facility.

For all of these reasons, plaintiff's motion for a temporary restraining order or other preliminary injunctive relief should be denied.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for a temporary injunction or restraining order be denied.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __16th__ day of February, 2007.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

32